IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SCOTT A. FRYE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 2:13-cv-2324-MHH-TMP |
| ) | |
| THE ATTORNEY GENERAL ) | |
| OF THE STATE OF ALABAMA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

On November 18, 2014, the Magistrate Judge filed a report in which he recommended that the Court deny the petition for writ of *habeas corpus* in this action. (Doc. 9). Petitioner Scott A. Frye filed objections to the report and recommendation on November 28, 2014.[1] (Doc. 10). Having carefully reviewed and considered *de novo* the report and recommendation, the objections to it, and other materials in the court file, the Court finds that the objections are due to be **OVERRULED** and the report and recommendation **ADOPTED and ACCEPTED.**

The Court overrules Mr. Frye's objections in part because he misunderstands the standard of review that the Magistrate Judge and this Court must use in analyzing his petition. As the Magistrate Judge pointed out, Mr. Frye contends that the prosecution of various securities-fraud charges against him in the Circuit Court of Jefferson County violated his Sixth Amendment right to a speedy trial. Mr. Frye raised the speedy-trial issue in the state trial court, and the trial court denied his motion to dismiss the indictments. He then pleaded guilty to some of the charged

---

[1] Although the clerk received the objections and docketed them on December 4, 2014, they are deemed filed on the date Mr. Frye delivered them to prison officials for mailing. The objections are dated November 28, 2014. (Doc. 10, p. 14). Therefore, the Court regards November 28, 2014 as the filing date. Mr. Frye's objections are timely.

offenses (others were dismissed as part of the plea agreement), while preserving his right to appeal the denial of his effort to dismiss the indictments on speedy-trial grounds. Mr. Frye's appeal was not successful; the Alabama Court of Criminal Appeals found no violation of Mr. Frye's right to speedy trial.

Because the state courts resolved this claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 limits this Court's review of the state court decisions. This Court must determine whether the state court decisions are "contrary to" or an "unreasonable application" of binding Supreme Court precedent, or whether they are based on unreasonable findings of fact in light of the record evidence. See 28 U.S.C. § 2254(d)(1) and (2). Under this standard of review, the federal *habeas* court may grant relief with respect to a claim adjudicated on the merits by the state courts only if the state courts (1) rely on legal authority "contrary to" that required by the Supreme Court, or (2) unreasonably fail to apply Supreme Court precedent to the facts of the claim, or (3) rely upon findings of fact that are clearly unreasonable under the record evidence. The federal *habeas* court does not undertake a plenary or *de novo* review of the merits of the petitioner's claim unless one or more of the previously-described circumstances exists. This standard of review is very deferential to the state courts. Under the "unreasonable application" standard, the question is not whether the state courts correctly decided the claim but whether the state court resolution was so "objectively unreasonable" that its error is not fairly debatable.

The Magistrate Judge correctly applied this deferential standard of review. The state courts' resolution of Mr. Frye's speedy-trial claim was not contrary to or an unreasonable application of Supreme Court precedent. Those courts correctly looked to Barker v. Wingo, 407 U.S. 514 (1972), and its four-part balancing test to analyze Mr. Frye's speedy-trial claims.

Barker is well-settled law.  Thus, the state courts' resolution of the claim was not "contrary to" Supreme Court law.  Likewise, the state courts' analysis of the claim in this case under the four-part balancing test was not an unreasonable application of the test.  As quoted at length in the report and recommendation, the Alabama Court of Criminal Appeals addressed each part of the Barker balancing test and concluded that much of the delay that Mr. Frye identified was a consequence of Mr. Frye's nearly five-year sojourn in the Philippines.

Mr. Frye contends that the state courts failed to consider the teaching of Doggett v. United States, 505 U.S. 647 (1992) on "presumptive prejudice," thus making the courts' application of the Barker test objectively unreasonable.  He contends that under Doggett, he suffered "presumptive prejudice," such that he is not required to prove *actual* prejudice from the delay.  The Court is not persuaded.

Doggett established that there is a direct relationship between the length of delay, the fault of the prosecuting authority, and the ability of the defendant to prove actual prejudice.  In Doggett, the Supreme Court reasoned that when the prosecuting authority is at least negligent in its efforts to bring a defendant to trial, the longer the delay in doing so, the more likely it is that the defendant and the prosecuting authority suffer actual prejudice, prejudice of a type that cannot be readily identified or proven.  The Court explained:

> *Barker* made it clear that "different weights [are to be] assigned to different reasons" for delay. *Ibid.* Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.  And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.

Doggett v. United States, 505 U.S. 647, 657 (1992).  Even under the rule in Doggett, there is a balancing of the relative weights assigned to delay and fault, as they impact the defendant's obligation to prove actual prejudice.  "To be sure, to warrant granting relief, negligence

unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." Doggett, 505 U.S. at 657.  Thus, there is no defined point in time at which the defendant's obligation to prove actual prejudice evaporates.  The point in time at which "presumptive prejudice" replaces proof of actual prejudice depends upon a balancing of the nature and degree of fault by the prosecuting authority and the length of the delay.

Under the rule in Doggett, this Court cannot say that the balancing done by the Alabama state courts was objectively unreasonable.  The facts in this case are very different from those in Doggett.  As in the instant case, the defendant in Doggett left the United States shortly before he was indicted, but that is where the similarity ends.  Unlike the defendant in Doggett, Frye did not return to the United States from the Philippines until Philippine immigration authorities arrested him and deported him to the United States.  The Supreme Court faulted the government in Doggett because the defendant returned to this country and lived openly under his true name for six years before the government located and arrested him in Virginia.  Mr. Frye went to the Philippines and remained there for almost five years, only to be expelled by Philippine authorities when he could not renew his American passport.  Upon his return to the United States in early 2010, he was arrested in California and extradited to Alabama.  Given these different facts, the conclusions reached by the Alabama courts about the balance of fault, delay, and prejudice are not objectively unreasonable.

Mr. Frye argues that the State of Alabama knew he was in the Philippines as early as 2006 yet negligently failed to do anything to have him arrested there.  Even assuming petitioner's evidence on this is admissible, having knowledge that Frye was in the Philippines is a far cry from knowing where he is in the Philippines so that he may be arrested.  *See United*

4

*States v. Bagga*, 782 F.2d 1541, 1543–44 (11th Cir. 1986) (holding that a seven-year delay between indictment and trial did not violate speedy trial rights where government received a tip that defendant was in India but had no exact address, a prerequisite for extradition proceedings). Other than posting his arrest warrant on NCIC, which the state prosecutors did, Mr. Frye has not identified other reasonable steps that the State of Alabama could have taken to get the Philippine authorities to locate and arrest him.[2]

Mr. Frye also argues that there was undue delay in bringing him to trial after his return to the United States. He notes that he was served with the Jefferson County indictments (the ones at issue in this matter) in February of 2011 while in the Coffee County jail awaiting trial on charges pending in that court. The pending charges in Coffee County explain the delay of trial in Jefferson County. The Coffee County indictment predated the Jefferson County indictments, entitling Coffee County to hold Mr. Frye for trial there first. Although the date of the Coffee County trial is not clear from the record, Mr. Frye went to trial there, was convicted, and sentenced. It appears that he was turned over to Jefferson County authorities in May 2011. (See Petition, Doc. 1, p. 19). He received a hearing on his speedy trial motions in February 2012, and by January 2013, he conditionally pleaded guilty. The conclusion by the state courts that this was not an unreasonably long delay, given the need to have a hearing regarding the facts of his speedy trial motions, is not objectively unreasonable.

In sum, giving due deference of the merits determination reached by the Alabama state courts, this Court cannot say that Mr. Frye has shown that the rejection of his speedy trial

---

[2] The Court notes that while state authorities investigated Mr. Frye for selling unregistered securities to Alabama residents, Mr. Frye was living in Knoxville, Tennessee. Mr. Frye admits that he moved to Pennsylvania in 2003 before going to the Philippines in September of 2005. (See Pet., Doc. 1, p. 16). This movement may have made it more difficult for state authorities to locate Mr. Frye.

argument was "contrary to" or an "unreasonable application of" Supreme Court precedent, or that it was based on an unreasonable determination of the facts in light of the record evidence. Accordingly, that determination must stand, as the Magistrate Judge recommended.

By separate order, the court will **ADOPT** and **ACCEPT** the report and recommendation and **DENY** and **DISMISS** the instant *habeas* action.

**DONE** and **ORDERED** this January 26, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE